UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MYRON RICHARDSON,

       Plaintiff,                               Case No. 1:06-CV-858

v.                                           HON. GORDON J. QUIST

UNIVERSAL TECHNICAL INSTITUTE
OF ARIZONA, INC., d/b/a Universal
Technical Institute, Inc.

       Defendant.
_____/

**OPINION**

      Plaintiff, Myron Richardson ("Richardson"), filed a complaint against his former employer,

Universal Technical Institute of Arizona, Inc. ("UTI"), in the Kalamazoo County Circuit Court on

or about September 11, 2006, alleging claims under 42 U.S.C. § 1981 and the Elliott-Larsen Civil

Rights Act ("Elliott-Larsen"), M.C.L.A. § 37.2101, *et seq*.  UTI was served with the summons and

complaint that same day, and it removed the case to this Court on December 7, 2006, on the basis

of federal question jurisdiction.  UTI filed a motion for summary judgment or to compel arbitration

on March 12, 2007.  Richardson has not responded to the motion.  For the reasons set forth below,

the Court will grant the motion and dismiss Richardson's complaint.

      UTI is a technical school.  It hired Richardson as a recruiter in 1997.  UTI terminated

Richardson's employment on September 11, 2003, allegedly based upon Richardson's failure to meet

his performance goals.  Richardson alleges in his complaint that UTI's decision to terminate his

employment was motivated by unlawful discrimination and retaliation.  At the time he was hired,

Richardson signed a Service Agreement, which contained the following provision regarding

arbitration:

> AGREEMENT TO ARBITRATE:   Educational Representative agrees that any
> dispute arising between Employer and Educational Representative: (I) in connection
> with Educational Representative leaving employment, either voluntarily or
> involuntarily, or (ii) in connection with Educational Representative's employment
> (whether or not it involves Educational Representative leaving employment) *which
> falls within the jurisdiction of the Equal Employment Opportunity Commission (or
> any state counterpart of the Equal Employment Opportunity Commission)*, will be
> resolved exclusively through the process of arbitration, pursuant to the Federal
> Arbitration Act and the rules of the American Arbitration Association.   All
> administrative expenses of arbitration (but not including attorneys' fees or taxable
> costs, as to which each party agrees to bear his, her, or its own respective fees and
> costs) will be borne equally by the parties.  Educational Representative understands
> that, by agreeing to use arbitration as the exclusive forum for the resolution of the
> employment disputes described above, Educational Representative is waiving the
> right to assert any such claims in the state or federal courts.   Educational
> Representative makes this waiver voluntarily, with full knowledge of its effects, and
> after having had full opportunity to discuss it with persons of his/her choosing.  For
> any lawsuit not governed by this arbitration provision, the prevailing party will be
> awarded its costs and attorneys fees.

(Service Agreement ¶ 12 (italics added).)

As UTI correctly notes, the Federal Arbitration Act ("FAA") embodies the "liberal federal

policy of favoring arbitration agreements, notwithstanding any state substantive or procedural

policies to the contrary."[1] *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24,

103 S. Ct. 927, 941 (1983).  Thus, "arbitration should not be denied unless it may be said with

positive assurance that the clause does not cover the dispute." *Georgia Power Co. v. Cimarron Coal

Corp.*, 526 F.2d 101 (6th Cir. 1975) (internal quotation marks and citation omitted).  Because it is

the arbitration agreement that creates the parties' duty to arbitrate, "a party cannot be required to

---

[1]The Court notes that § 1 of the FAA excludes "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."  The Sixth Circuit has held, however, that the phrase "any other class of workers engaged in foreign or interstate commerce" should be narrowly construed to apply only to "any class of workers actually engaged in the movement of goods in interstate commerce in the same way that seamen and railroad workers are." *Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592, 600-01 (6th Cir. 1995).  Therefore, the exclusion would not apply in this case.

submit to arbitration any dispute that the party has not agreed to so submit." *Bratt Enters., Inc. v. Noble Int'l Ltd.*, 338 F.3d 609, 612 (6th Cir. 2003) (citing *Roney & Co. v. Kassab*, 981 F.2d 894, 897 (6th Cir. 1992)).  It is well-settled, however, that "when the language is ambiguous or unclear, any doubts concerning the scope of arbitrability should be resolved in favor of arbitration." *McGinnis v. E.F. Hutton & Co.*, 812 F.2d 1011, 1013 (6th Cir. 1987) (citing *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24-25, 103 S. Ct. at 941).

The language of the arbitration clause pertaining to its scope is certainly not a model of clarity.  It provides that any dispute between the employee and UTI "(I) in connection with Educational Representative leaving employment, either voluntarily or involuntarily, or (ii) in connection with Educational Representative's employment (whether or not it involves Educational Representative leaving employment) which falls within the jurisdiction of the Equal Employment Opportunity Commission (or any state counterpart of the Equal Employment Opportunity Commission)" will be submitted to arbitration.  An argument could be made that this language means that only claims that are subject to the jurisdiction of the Equal Employment Opportunity Commission ("EEOC") or any state counterpart are subject to arbitration.  The argument would be that the two categories of claims differentiate only between claims involving termination of employment and all other employment claims and that the EEOC/state counterpart jurisdictional limitation applies to all employment claims.  The problem with this argument is that the second category also includes claims involving termination: "(whether or not it involves Educational Representative leaving employment)."  On the other hand, it appears to the Court that the first category was intended to cover any claim involving termination of employment, while the second category was intended to cover any statutory claim, e.g., Title VII or the Americans with Disabilities Act ("ADA"), over which a federal or state agency has jurisdiction.  In other words, the first category

3

is narrower than the second category in terms of the conduct giving rise to the claim because it covers only situations involving termination, but it is broader than the second category in the sense that it includes all legal bases or theories, including civil rights statutes such as Title VII, the ADA, Elliott-Larsen, and 42 U.S.C. § 1981, and state law claims such as breach of employment contract. The second category covers a broader range of conduct but a narrower class of claims – limited to those statutory claims over which an agency has jurisdiction.  This apparent ambiguity could have been avoided by simply including "all claims arising out of Educational Representative's employment," but for purposes of the instant motion, the Court need only concern itself with whether the clause can be construed in a manner to cover the claims at issue, in which case, arbitration is required.  Based upon the foregoing, Richardson's Elliott-Larsen claim falls within both categories because it is a claim in connection with his leaving employment involuntarily and because it is a claim over which the Michigan Department of Civil Rights has jurisdiction.  *See* M.C.L.A. § 37.2602(c).  Richardson's claim pursuant to 42 U.S.C. § 1981 would fall within the first category, but not the second.  *See Toney v. Seaboard Sys. R.R.*, Civ. A. No. C-83-1298-R, 1987 WL 13322, at *20 (M.D.N.C. Apr. 3, 1987) (stating that "[a] § 1981 plaintiff alleging racial discrimination in employment has no duty to exhaust EEOC administrative remedies"); *Sifre v. Dep't of Health*, 38 F. Supp. 2d 91, 96 (D.P.R. 1999) (stating that "the EEOC has no jurisdiction over claims brought pursuant to § 1983").  Accordingly, the arbitration clause must be construed in favor of arbitration.

The only remaining issue is whether Richardson's claims are the types of claims that may be subjected to mandatory arbitration.  The Sixth Circuit has held that a party may be compelled to arbitrate claims under both Title VII and the Age Discrimination in Employment Act.  *See Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305, 312 (6th Cir. 1991).  Other courts, employing the same reasoning, have held that a party may also be compelled to arbitrate claims under § 1981.  *See*

4

*Winfrey v. Bridgestone/Firestone, Inc.*, No. 99-1405, 1999 WL 1295310, at \*2 (8th Cir. Dec. 23, 1999) ("We also reject Winfrey's argument that his Title VII and § 1981 claims cannot be subjected to the Plan's mandatory arbitration provisions."); *Williams v. Katten, Muchin & Zavis*, 837 F. Supp. 1430, 1436-37 (N.D. Ill. 1993) (stating that "Plaintiff has failed to meet her burden of providing that in enacting the civil rights statutes she invokes here, Congress intended to preclude arbitration as a means of addressing claims thereunder").  Similarly, the Michigan Court of Appeals has held that an agreement to arbitrate statutory employment discrimination claims, such as those arising under the Elliott-Larsen Act, is valid so long as it does not waive the substantive rights and remedies of the statute and the arbitration procedures are fair.  *See Rembert v. Ryan's Family Steak Houses, Inc.*, 235 Mich. App. 118, 156, 596 N.W.2d 208, 226 (1999).  The arbitration clause at issue informs the employee that he is waiving his right to assert his claim in a judicial proceeding, but it does not deprive the employee of any substantive rights or remedies under the Elliott-Larsen Act or any other applicable civil rights statute.  In addition, the arbitration clause states that arbitration shall be governed by the rules of the American Arbitration Association, and nothing limits the relief or remedy that the arbitrator deems just and equitable.  Accordingly, the Court concludes that Richardson's claims under § 1981 and the Elliott-Larsen Act are arbitrable.

Having concluded that UTI's motion to compel arbitration should be granted, the Court will exercise its discretion to dismiss this case, rather than stay it, given that all claims will be submitted to arbitration.

An Order consistent with this Opinion will be entered.

Dated:  May 8, 2007                                          /s/ Gordon J. Quist
                                                            GORDON J. QUIST
                                                            UNITED STATES DISTRICT JUDGE

5